# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAN J. ROSS,<br><br>    Plaintiff,<br><br>v.<br><br>PADRES LP, et al.,<br><br>    Defendants. | Case No.: 17-CV-1676 JLS (JLB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING PLAINTIFF'S COMPLAINT**<br><br>(ECF No. 16) |

Presently before the Court is Defendants Padres, L.P., Christina Hall, and Ian Graham's Motion to Dismiss Plaintiff's Complaint, ("MTD," ECF No. 16). Also before the Court are Plaintiff Van J. Ross's Response in Opposition to, ("Opp'n," ECF No. 20),[1] and Defendants' Reply in Support of, ("Reply," ECF No. 21), Defendants' Motion. The Court vacated the hearing on the motion and took the matter under the submission pursuant

---

[1] Plaintiff filed a letter in lieu of a formal opposition brief. In the letter, Plaintiff, amongst other claims and requests, asks the Court to deny Defendant's MTD. Therefore, the Court will construe the letter as Plaintiff's Opposition brief. However, the Court does not address the other claims and allegations in the Opposition because they were not pleaded in the original Complaint. *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992) (explaining that the review for a dismissal for failure to state a claim is "based on the contents of the complaint").

to Civil Local Rule 7.1(d)(1). (ECF No. 22.) After considering the parties' arguments and the law, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

This case arises from a dispute between Plaintiff Van J. Ross and his former employer Padres L.P. On August 21, 2017, Plaintiff filed his Complaint against Defendants Padres L.P., Christina Hall, and Ian Graham. ("Compl.," ECF No. 1.)[2] Plaintiff was employed by the Padres for roughly eleven years as a Guest Service Representative ("GSR"). (MTD 2; "Compl. Ex.," ECF No.1-2, at 6, 11.)[3] In 2015, Plaintiff began using a cane during work. (Compl. Ex. 11.) Plaintiff claims that he was told by his supervisor, Christina Hall, to put the cane in his locker. (*Id.*) Further, Plaintiff alleges that Hall did not inform him of Defendant Padres' policy that he could receive a reasonable accommodation to use his cane if he provided a physician's note. (*Id.*) Plaintiff worked the remainder of the 2015 baseball season without his cane, which caused him pain. (*Id.*) The following season, Plaintiff was informed by another supervisor, Kameron Durham, that use of a cane during work was acceptable if an employee received medical authorization from a physician. (*Id.*) On April 15, 2016, the same day Durham informed Plaintiff of the policy, Plaintiff provided a medical authorization and was granted an accommodation to use his cane during work and to be placed in areas of the ballpark where the use of his cane would be safe. (*Id.*; MTD 2.) Immediately after the meeting in which Defendants granted Plaintiff a reasonable accommodation, Plaintiff alleges that he was told by Hall not to tell other employees how he was able to receive a reasonable accommodation. (Compl. Ex. 19.)

---

[2] Plaintiff's Complaint consists of five pages. However, Plaintiff filed an additional sixty-two pages of supporting documentation with the original Complaint. The Court considers the additional exhibits as part of the Complaint per Rule 10(c) of the Federal Rules of Civil Procedure. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (stating that additional documents can be considered a part of the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

[3] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

On August 8, 2016, Plaintiff requested a non-medical leave of absence for the remainder of the 2016 season, which was granted. (*Id.*) On November 1, 2016, Plaintiff was asked if he intended to resume his employment with the Padres after his leave of absence. (*Id.* at 17.) Plaintiff indicated that he did. (*Id.*) On November 4, 2016, Plaintiff testified at an unemployment insurance hearing regarding his physical ability to work, where he was granted unemployment insurance. (*Id.* at 20.) Plaintiff claims that he collected unemployment for the days that he did not work. (Opp'n 2.) Plaintiff alleges that Defendants challenged Plaintiff's unemployment claims three times by filing three documents with the state Employment Development Department ("EDD"). (Compl. Ex. 43.) The EDD ruled in Plaintiff's favor. (*Id.*)[4] Plaintiff alleges that Defendants' efforts to challenge his unemployment were intended to make Plaintiff quit his employment with the Padres. (*Id.*) To that end, Plaintiff's testimony at the unemployment hearing prompted Defendants Ian Graham and Christina Hall to request medical clearance from Plaintiff to ensure that he was healthy enough to fulfill his work duties when Plaintiff's leave of absence was over. (*Id.* at 15.) Defendants informed Plaintiff that the need for medical clearance was company policy. (*Id.*)[5] Unlike his April 2016 physician's note, Plaintiff did not provide the required clearance. (*Id.*) On December 14, 2016, Defendants and Director of Human Resources, Sara Greenspan, called Plaintiff to determine whether Plaintiff would provide the medical clearance. (*Id.*) During the call, Plaintiff refused to provide a medical clearance. (*Id.*)

Plaintiff alleges that the December 14, 2016 call from Defendants violated the dispute resolution provision in the Collective Bargaining Agreement ("CBA") between Defendant and Service Employees International Union-United Services Workers West ("SEIU"), where Plaintiff is a union member. (Compl. 2.) Plaintiff claims that the phone

---

[4] The facts do not provide the timeline of Defendants' challenges to the EDD and if those challenges affected, in any way, the ruling on November 4, 2016 that granted Plaintiff unemployment.
[5] The facts are unclear as to when Defendants asked Plaintiff for the medical clearance after the EDD hearing and when Plaintiff refused to provide the clearance.

3

call amounted to a "formal hearing," which he was unaware could result in losing his job. (*Id.*)  Plaintiff alleges that he was neither given prior notice of the "hearing," nor given an opportunity to be represented by a union member as required by the CBA.  (*Id.*) Immediately after the phone call, Plaintiff sent a "cease and desist" letter to Defendant Ian Graham, in which Plaintiff asked Graham to stop "negative and frivolous activities to cause [him] to quit [his] job," and to stop the "elder abuse."  (Compl. Ex. 42.)  Two days later, on December 16, 2016, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint against Defendant, citing employment discrimination.  (Compl. 2.)

      On December 20, 2016, Plaintiff received a letter from Defendants informing him that his failure to provide a medical clearance resulted in the termination of his employment. (Compl. Ex. 15.)  On January 12, 2017, Plaintiff filed an incident report with SEIU outlining his grievance with Defendants.  (*Id.* at 11).  On January 20, 2017, Plaintiff was issued a medical clearance by his physician, and four days later provided a copy of the clearance to Greenspan.  (*Id.* at 21.)  Defendants did not offer to rehire him and told Plaintiff that it was "too late," despite the fact Plaintiff provided the note "several months before baseball season."  (Opp'n 3.)  In May 2017, the EEOC issued Plaintiff a 90-day right to sue notice.  On July 20, 2017, Plaintiff wrote two letters to SEIU stating that he did not receive any union assistance with his grievance and that there was a lack of support by the union.  (*Id.* at 2, 4.)  Plaintiff does not provide the outcome of the grievance that he filed with SEIU in January 2017.  Based on these events, Plaintiff alleges that the termination of his employment violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA").[6]  (Compl. 2.)  Plaintiff seeks to return to his employment with Defendants.  (Compl. Ex. 20.)

///

---

[6] Plaintiff provides additional allegations and claims in a letter titled "Supportive Evidence and Facts." (ECF No. 24.)  The Court does not address the allegations in that letter because the additional claims against Defendant that were not in the original Complaint and only claims alleged in a complaint are allowed under Rule 7.  *See* Fed. R. Civ. P. 7; *Schneider*, 151 F.3d at 1197 n.1.

**LEGAL STANDARD**

**I.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555).  This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679.  "[W]here the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### A. Standards Applicable to Pro Se *Litigants in Civil Rights Actions*

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Particularly in civil rights cases, courts have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (citing *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In the Ninth Circuit, a court should grant a *pro se* litigant leave to amend his complaint "'unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Before a complaint is dismissed, a court must give the *pro se* plaintiff some notice of the complaint's deficiencies. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citing *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987), *superseded on other grounds by statute as stated in Lopez*, 203 F.3d at 1126–30). However, when amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000) (citing *Noll*, 809 F.2d at 1448).

///

///

# ANALYSIS

## I. CBA Claim Against Defendants

Defendants move to dismiss Plaintiff's CBA claim because they assert it is a "hybrid 301 claim" under the Labor Management Relations Act ("LMRA") and the applicable statute of limitations bars Plaintiff's hybrid § 301 claim. (MTD 5.) A hybrid section 301 claim requires a brief detour into the broader LMRA framework.

Section 301 of the LMRA applies to claims "founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1983); *see Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 857 (1987) ("The ordinary § 301 case is a contract claim in which a party to the collective-bargaining agreement expressly asserts that a provision of the agreement has been violated."); *see generally* 29 U.S.C. § 185. Moreover, if the right exists solely as a result of the CBA, the claim is preempted by § 301, which overrides any state breach of contract claim and subjects the claim exclusively to federal law. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

Here, both parties agree that the CBA applies in some respect. Plaintiff expressly asserts that Defendants violated a right created by a provision within the CBA, (*see* Compl. 2; Compl. Ex. 13),[7] which implicates a § 301 claim. *See Hechler*, 481 U.S. at 857; *see also Caterpillar*, 482 U.S. at 394. Defendants acknowledge that Plaintiff's claim arises out of the CBA. (*See* MTD 5.) The Court agrees with the parties that the CBA governs Plaintiff's contract dispute with his former employer. Plaintiff alleges Defendants violated the CBA's dispute resolution provision. Therefore, section 301 of the LMRA preempts Plaintiff's claim and federal law applies.

---

[7] Plaintiff provides a portion of the informal dispute resolution provision of the CBA in his complaint, (Compl. Ex. 13); however, he does not provide the remainder of the provision.

Next, Defendants state that Plaintiff's claim is a "hybrid 301 claim." (*Id.*) "As a general rule, members of a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement." *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990); *see Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). "Subject to very limited judicial review, [an employee] will be bound by the result according to the finality provisions of the agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).

If, however, during the grievance procedure the union representing the employee "acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," then "an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* (citing, e.g., *Vaca v. Sipes*, 386 U.S. 171 (1967)). This is a "hybrid" § 301 claim. A hybrid § 301 claim arises when an employee raises two causes of actions together: (1) a § 301 claim against an employer; and (2) a claim against a union for breach of the union's duty of fair representation. *Id.* at 165; *United Parcel Serv. v. Mitchell*, 451 U.S. 56, 66–67 (1981). In other words, an employee that claims a breach of a CBA must (1) exhaust the grievance procedure outlined in the CBA, where such procedures are final and binding; or (2) if a union member believes the union did not fulfill its duty of representation, file a hybrid § 301 claim against either the union, employer, or both. *See DelCostello*, 462 U.S. at 163–65.

The difficultly in this case is this: Plaintiff has not provided sufficient factual matter for the Court to evaluate his claim. First, Plaintiff has not provided sufficient factual allegations that he has exhausted his grievance remedies provided by the CBA. The following facts are discernable from Plaintiff's filings. On January 12, 2017, Plaintiff filed an incident report with SEIU. (Compl. Ex. 11.) In July 2017, Plaintiff sent letters to SEIU stating that he was not being helped or supported in his dispute with Defendants, (*id.* at 2–4). Plaintiff provides no other information beyond those two letters. Did Plaintiff exhaust his CBA grievance? What was the result? The answers to these questions cannot be

answered from Plaintiff's Complaint and exhibits. Until he exhausts his CBA remedies, Plaintiff cannot bring a claim in federal court. *See Republic Steel*, 379 U.S. at 652–53; *Carr*, 904 F.2d at 1317. If the grievance procedure concluded, Plaintiff is bound by the result provided by the union.[8] The Ninth Circuit has summarized an employee's choice in such circumstances as follows:

> If an employee pursues a grievance procedure under a collective bargaining agreement that the parties intended to be final, and receives an adverse determination, he may not challenge that determination under section 301 unless he shows that the union breached its duty of fair representation or that the procedure was otherwise infected.

*Dickeson v. DAW Forest Prods. Co.*, 827 F.2d 627, 629 (9th Cir. 1987) (citing *Vaca*, 386 U.S. 171; and *Huffman v. Westinghouse Electric Corp.*, 752 F.2d 1221, 1223 (7th Cir. 1985); and *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981)).

Construing Plaintiff's filings liberally, the Court infers that Plaintiff began the grievance procedure, but without additional facts the Court cannot determine the status of his grievance.

Second, if Plaintiff's theory is that his union has acted in a "discriminatory, dishonest, arbitrary, or perfunctory fashion," *DelCostello*, 462 U.S. at 164, such that the union has breached its duty of fair representation, then his claim is a hybrid § 301 claim. At the outset, it is unclear whether Plaintiff claims that SEIU violated its duty of fair representation because of its alleged lack of help or support. However, if Plaintiff claims that SEIU's lack of help and support hindered his ability to adjudicate his dispute, or that the representation caused an unfair outcome in the grievance procedure, then the claim is a hybrid § 301 claim. *See DelCostello*, 462 U.S. at 164–65. The issue becomes when the statute of limitations accrued.

---

[8] There is an exception to this rule when a CBA is unenforceable as contrary to public policy. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). Here, Plaintiff does not allege any facts meeting that narrow exception.

A hybrid § 301 claim has a six-month statute of limitations. *Id.* at 171–72 (holding that § 10(b) of the National Labor Relations Act and its 6-month statute of limitations applies to hybrid § 301 claims). In *DelCostello*, the Supreme Court held that the statute of limitations began to run upon completion of the grievance procedures because the respective employee-plaintiffs were challenging the outcome of those procedures. *Id.* at 172. Here, Plaintiff does not provide sufficient facts describing whether or when an official grievance procedure was exhausted or resolved. Plaintiff provides letters expressing his frustration with SEIU, but the letters are not indicative of when the cause of action accrued. (*See* Compl. Ex. 2–4.)

Defendants contend that Plaintiff's hybrid § 301 cause of action accrued when the phone call occurred on December 14, 2016. (MTD 5.) According to Defendants' calculation, the limitations period ran on June 12, 2017. (*Id.* at 6.) The Court disagrees with Defendant's calculation. A federal cause of action accrues when a plaintiff is aware of the wrong and can successfully bring a cause of action. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1396 (9th Cir. 1986) (citations omitted). If Plaintiff was injured by the failure of the union to represent him, then his cause of action accrued when he was aware SEIU breached its duty to him, not when the December 14, 2016 phone call occurred. *See DelCostello*, 462 U.S. at 172; *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986); *see also Thibodeaux v. Bay Area Bldg. Material Teamsters*, No. 17-CV-00188-MEJ, 2017 WL 1493280, at *4 (N.D. Cal. Apr. 26, 2017) ("Where the dispute arises in the grievance procedure context, the claim typically accrues at the conclusion of the grievance proceedings; where the claim arises outside of that context, the claim accrues when the employee reasonably should have learned of the violation."). Therefore, the Court does not have sufficient information to determine whether the potential hybrid § 301 claim is time-barred.

In sum, Plaintiff does not provide adequate facts for the Court to determine whether he exhausted the required grievance procedure. If he did not exhaust his grievance procedure, he cannot bring a civil action in federal court. If he did exhaust, then Plaintiff

is bound by SEIU's determination as to the outcome. Moreover, the Court is unable to ascertain whether Plaintiff asserts a hybrid § 301 claim against SEIU and if he does, whether the Complaint is time-barred. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's CBA claim.

## II. Discrimination Claims Against Defendants Christina Hall and Ian Graham

Plaintiff alleges that Defendants Hall and Graham discriminated against him under Title VII and the ADA. (Compl. 2.) Defendants argue that Plaintiff's Title VII and ADA allegations against Hall and Graham are improper because individual employees cannot be held liable under Title VII or the ADA. (MTD 6.) Defendants are correct. Individual employees cannot be held liable for Title VII violations. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). Similarly, individual employees cannot be held liable under the ADA. *Walsh v. Nev. Dep't. of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006). As such, any claims against the individual employees for violation of Title VII or the ADA are invalid. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims against Hall and Graham for violating Title VII and the ADA. Plaintiff's Title VII and ADA claims against Hall and Graham cannot be cured by amendment, therefore those claims are **DISMISSED WITH PREJUDICE**.

## III. Title VII and ADA Claims Against Defendant Padres L.P.

Plaintiff claims that Defendant Padres L.P. discriminated against him, violating Title VII and the ADA. (Compl. 2). Defendants argue that Plaintiff's Title VII and ADA claims should be dismissed because the allegations are "ambiguous," and, therefore, they are unable to decipher Plaintiff's allegations. (MTD 6–7.)

### *A. Title VII Violation*

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). There are four elements a plaintiff must prove for a *prima facie* Title VII case:

> (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff.

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Here, Plaintiff fails to meet the first element because he does not allege that he belongs to a class of persons protected by Title VII, i.e., race, color, religion, sex or national origin. Instead, he alleges that Defendants discriminated against him based on his medical status and age. (*See* Comp. Ex. 15, 42.) Medical status and age are not protected classes under Title VII. Thus, Plaintiff fails to assert a valid Title VII claim against Defendants.

### B. ADA Violation

The ADA prohibits employers from discriminating against "qualified individuals on the basis of disability." 42 U.S.C. § 12112(a). For a *prima facie* employment termination claim under the ADA, a plaintiff must show: (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual such that she can, with or without reasonable accommodation, perform the essential functions of her job; and (3) the employer terminated her because of her disability. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). The Court considers each element in turn.

#### 1. Disability Under the ADA

The ADA defines "disability," in relation to an individual, as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C); *Walton v. U.S. Marshal Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). Here, Plaintiff alleges that Defendants allowed him to use his cane during work and they asked him for medical authorization to work with the case, which he subsequently received from his physician. (*See* Compl. Ex. 11.) These alleged facts plausibly support that his physical impairment limits his ability to work, he has a record of

the impairment, and he is regarded as having an impairment. Therefore, Plaintiff plausibly states a claim that he classifies as an individual with a disability under the ADA.

### 2. *Qualified Individual*

To prove that he is a qualified individual with a disability, Plaintiff must show that he is able to perform the essential functions of the job, with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990) ("A plaintiff bears the burden of demonstrating that she can perform the essential functions of her job with or without reasonable accommodation.").

Here, Plaintiff does not allege what the essential functions of his job were, or any details of what his work duties entailed. However, Defendants claim that as a GSR, Plaintiff was responsible for helping guests find their seat in a particular area of the ballpark, ensuring smooth flow of traffic, and ensuring a safe environment. (MTD 2.) Plaintiff alleges that he was able to work while using his cane. (Compl. Ex. 6–7.) Further, Plaintiff received a reasonable accommodation from Defendants to use his cane and they placed him in areas where he could safely use his cane; nothing in the record suggests he could not do his job. (*Id.* at 11; MTD 2.) Moreover, the facts suggest that Defendants would have allowed Plaintiff to continue working after his leave of absence as long he provided a medical clearance from his physician. (Compl. Ex. 15.) This implies that Plaintiff was able to fulfill the essential duties as a GSR, as long as he had a reasonable accommodation—his cane.

Taking all the factual allegations together, the Court finds that Plaintiff has plausibly established that he could perform the essential functions of his job. Defendants granted Plaintiff a reasonable accommodation after Plaintiff provided a medical clearance to continue working. Presumably, Defendants would have allowed him to continue working had he submitted a renewed medical clearance on time.

/ / /

/ / /

### 3. Discriminatory Employment Termination

Plaintiff must prove that his employment was terminated because of his disability. *See Kennedy*, 90 F.3d at 1481; *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 994 (9th Cir. 2007) ("An employee bears the burden of proving that he was discriminated against 'because of' a disability." (quoting 42 U.S.C. § 12112(a))). The ADA outlines certain actions or inactions that constitute discrimination. *See* 42 U.S.C. § 12112(b)(1)–(7).

Here, Plaintiff does not assert that Defendants violated any of the discriminatory conditions prohibited by the ADA. § 12112(b)(1)–(7). To the contrary, the alleged facts suggest that Defendants did not engage in discriminatory behavior under the ADA because they granted Plaintiff a reasonable accommodation. *See* § 12112(b)(5); (Compl. Ex. 11.) Additionally, Defendants gave Plaintiff multiple opportunities to submit his medical clearance. (Compl. Ex. 15.) Defendants also gave Plaintiff notice of the repercussions of not submitting the clearance. (*Id.*) Yet, Plaintiff refused to submit the clearance. By way of comparison, in April 2016, Defendants requested Plaintiff provide medical authorization if he wanted to use his cane during work, he did so, and his employment was unaffected by his disability.

The facts as pleaded suggest that Plaintiff's employment termination was a result of his failure to provide Defendants with the medical clearance and not due to discriminatory animus. Plaintiff does not offer sufficient facts to connect his termination with the discriminatory actions prohibited by the ADA. Therefore, Plaintiff does not establish the third element required for a *prima facie* ADA case.

Although the Court liberally construes Plaintiff's Complaint, the Complaint's multiple conclusory statements regarding Title VII and ADA violations as well as the lack of plausible factual matter do not state a claim upon which relief can be granted. *See Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Title VII and ADA claims against Padres L.P., and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Padres L.P.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss, (ECF No. 16), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint, (ECF No. 1), except for his Title VII and ADA claims against individuals, which the Court **DISMISSES WITH PREJUDICE**. If Plaintiff wishes to re-allege his claims against Defendants that are dismissed without prejudice, Plaintiff **MAY FILE** an amended complaint <u>on or before thirty (30) days from the date which this Order is electronically filed</u>. Plaintiff is cautioned that should he choose to file a First Amended Complaint, it must be complete by itself, comply with Federal Rule of Civil Procedure 8(a), and that any claim, against any and all defendant not re-alleged will be considered waived. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"). Failure to file within the specified time period may result in this case being dismissed with prejudice. *See Edwards v. Marin Park*, 356 F.3d 1058, 1065 (9th Cir, 2004) ("The failure of the plaintiff eventually to respond to the court's ultimatum—either by amending the complaint or by indicating to the court that it will not do so—is properly met with the sanction of a Rule 41(b) dismissal.").

Finally, the Court addresses two requests Plaintiff mentions in his Opposition brief. He seeks the appointment of counsel, (Opp'n 1), and to initiate discovery, (*id.*). The Court has already rejected Plaintiff's previous request for counsel because he did not provide sufficient justification that his case constitutes as an exceptional circumstance. (*See* ECF No. 10, at 3.) Here, Plaintiff does not provide any new reasoning that meets the exceptional circumstance standard. For the same reasons outlined in the Court's prior order, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's request for counsel. *See id.* Additionally, discovery is improper at this stage in the proceedings. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . ."). Plaintiff's claim has not survived the motion to dismiss stage.

///

1 | The Court **DENIES WITHOUT PREJUDICE** Plaintiff's request to conduct discovery.
2 |     **IT IS SO ORDERED.**
3 | Dated: June 25, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge